F I L E D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

MAY 0 9 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 50072-03 |
| vs. | ) | Judge Frederick J. Kapala |
| | ) | |
| JESSICA L. GIBSON | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JESSICA L. GIBSON, and her attorney, BRENT D. BLAIR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 6, 9, 12 & 13), and interstate carrier fraud, in violation of Title 18, United States Code, Section 1341 (Count 10).

3.     Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Six of the indictment.  Count Six charges defendant with wire fraud.

### Factual Basis

6.      Defendant will plead guilty because she is in fact guilty of the charge contained in Count Six of the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

From approximately March of 2004 through approximately August of 2004, defendant was employed at a business known as Mortgage Solutions, which was located at 2222 East State Street in Rockford, Illinois.  Mortgage Solutions was a mortgage brokerage business. Within Mortgage Solutions, co-defendant Fuchs operated his own office, which was sometimes referred to as the "Mike Fox Division." Fuchs employed individuals who worked directly for him.  The "Mike Fox Division" was located on the second floor of the building at 2222 East State Street.

Defendant was employed as the loan processor for the "Mike Fox Division." As the loan processor, defendant was responsible for insuring that all documents required by the lenders were completed and placed into the borrowers' loan files.

A short time after she was hired, defendant Fuchs began instructing defendant to create false documents and place those false documents into the loan files.  Defendant complied with Fuchs' instructions.  Defendant falsified various documents, as directed by

2

defendant Fuchs, and then placed those false documents in the loan files that were sent to the lenders.

Several of the false documents defendant created related to the borrowers' employment. Many of the private lenders that defendant Fuchs brokered loans for required proof of the proposed borrowers' income. For example, many private lenders required that Verification of Employment ("VOE") forms be submitted by the borrowers' employers. On these VOE forms, the employers were required to state the borrowers' current wages, as well as their wages for the two preceding years. In addition, the lenders often required copies of the borrowers' W-2s and most recent pay stubs.

On various occasions, defendant Fuchs directed defendant to create false VOE forms. On these forms, defendant falsely stated that the borrowers were employed at certain businesses, including Midwest Computer Systems, a defunct business formerly owned by co-defendant Anast.

Fuchs also frequently directed defendant to falsely alter documents before they were sent to the lenders. For example, some lenders required Verification of Mortgage ("VOM") forms be submitted by the borrowers' prior lenders. The lenders used these VOM forms to determine if the borrowers had made timely payments on their prior mortgages. On certain occasions, Fuchs instructed defendant to alter the VOMs to remove late payment entries. Defendant accomplished these alterations by covering the late payment entries, photocopying

3

the VOMs with the late payment entries covered, and then sending the photocopies of the VOMs, which did not show the late payment entries, to the lender.

In addition to the VOMs, Fuchs also directed defendant to fraudulently alter various other documents before they were sent to the lenders. For example, on at least one occasion, Fuchs directed defendant to alter a borrower's credit report. Defendant accomplished this alteration by cutting out a higher credit score from a previous borrower's credit report, "pasting" the higher score over the current borrower's actual credit score, photocopying the page showing the higher credit score, and sending the photocopied page with the higher credit score to the lender.

On a few occasions, Fuchs also directed defendant to contact a representative of an investment firm in Rockford and solicit the investment representative to prepare false investment statements for certain borrowers. Fuchs told defendant the type of investment account to have created and the amount of the investment that was needed to be shown in the fake account. Defendant relayed this information to the investment representative. The fraudulent investment statements were used to deceive the lenders into believing that the borrowers had significant assets.

Defendant admits that she knew that the false and fraudulently altered documents were being used to deceive commercial lenders and to get unqualified borrowers qualified for loans. Specifically, defendant admits that she knew that the false and fraudulently altered

4

documents were being sent to the commercial lenders for the purpose of deceiving those lenders about the prospective borrowers' income and credit-worthiness.

In furtherance of the scheme, defendant and co-defendants Fuchs and Anast caused false documents to be sent to RBMG, Inc., in support of a loan application for an individual referred to herein as "Buyer F," including: (1) a "Verbal Verification of Employment" form which falsely stated that "Buyer F" was employed by Midwest Computer Systems; and (2) a false pay stub for "Buyer F" from Midwest Computer Systems for the pay period of 3-1-04 thru 3-15-04.

On or about March 19, 2004, defendant and co-defendants Fuchs and Anast knowingly caused to be transmitted by means of a wire communication in interstate commerce from Georgia, to Rockford, in the Northern District of Illinois, Western Division, certain signals, namely a bank transfer in the amount of $162,347.99 for a loan to "Buyer F," who was purchasing a property located on Bridgewater Drive in Belvidere, Illinois, which funds were deposited into Rockford Title Company's account at Alpine Bank in Rockford, Illinois.

7.     The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.    Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 20 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

6

        a.       **Applicable Guidelines.**  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

        b.       **Offense Level Calculations.**

        i.       The base offense level for the charge in Count One of the indictment is 7, pursuant to Guideline §2B1.1(a)(1).

        ii.       Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iii.       In accord with Guideline §3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for

7

acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 1 and defendant's criminal history category is I:

      i.    On or about February 2, 2003, defendant was convicted of Driving Under the Influence in the Circuit Court of Winnebago County, Illinois, and sentenced to 1 year of conditional discharge.

      d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 5, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 0 to 6 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.    Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts

and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this plea agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11. Defendant agrees she will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter arising from the facts underlying the indictment in this case. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea

Agreement. Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 , to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

13.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the

10

sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15.     Regarding restitution, the parties acknowledge that pursuant to Title 18, United States Code, § 3663A, the court must order defendant, together with any jointly liable co-defendants, to make full restitution to the victim financial institutions in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.  Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

## Pre-Sentence Investigation Report/Post-Sentence Supervision

18.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters.  The government

will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20. For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to

12

the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 50072-03.

22.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.    Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.  The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

14

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

   b. **Waiver of appellate and collateral rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or

forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

        c.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights. Defendant understands that she has the right to have the criminal charges in the indictment brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the indictment brought against her within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the indictment were brought.

## Other Terms

24.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

16

25.     Defendant understands that pursuant to Title 12, United States Code, Section 1829, her conviction in this case will prohibit her from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation (FDIC) except with the prior written consent of the FDIC and, during the ten years following her conviction, the additional approval of this Court. Defendant further understands that if she violates this prohibition, she may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

### Conclusion

26.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27.     Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to re-sentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations

on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

29.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30.    Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney.  Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:    5-9-08

PATRICK J. FITZGERALD
United States Attorney

JESSICA L. GIBSON
Defendant

SCOTT A. VERSEMAN
Assistant U.S. Attorney
308 West State Street – Room 300
Rockford, Illinois 61101
815-987-4444

BRENT D. BLAIR
Attorney for Defendant
One Court Place – Suite 404
Rockford, Illinois 61101
815-962-3427

18